Opinion issued May 3, 2012



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00382-CV

———————————

JEANNE KIRKPATRICK,
Appellant

V.

LVNV FUNDING, LLC, Appellee

 

 



On Appeal from the 165th District Court

Harris
County, Texas

Trial
Court Cause No. 2009-37721

 

 



MEMORANDUM OPINION

          Appellant,
Jeanne Kirkpatrick, challenges the trial court’s judgment, entered after a
bench trial, in favor of appellee, LVNV Funding, LLC (“LVNV”), in LVNV’s suit
against Kirkpatrick for breach of contract. 
In three issues, Kirkpatrick contends that the evidence is legally and
factually insufficient to support the trial court’s judgment and the trial
court erred in admitting into evidence LVNV’s business records affidavit and denying
her motion for instructed verdict.            

          We affirm.

Background

          In its
petition,[1] LVNV, as the assignee of
the “Original Creditor” Sears, alleged that
Kirkpatrick received and used, or authorized the use of, a Sears credit card; she
defaulted on her payment obligation; and the “entire balance” became due.  In support of its breach of contract claim,
LVNV asserted that Sears made Kirkpatrick an offer of credit; Kirpatrick’s use of the Sears card constituted her acceptance
of the Sears card member agreement; Sears had sent Kirkpatrick monthly bills
reflecting all charges, payments, and balances due; Kirkpatrick owed a balance
of $18,080.32; and Kirkpatrick had not satisfied LVNV’s demand for payment.[2]  

          Kirkpatrick
filed an answer generally denying LVNV’s allegations and asserting multiple
verified denials.  She denied that the
account “was true,” she had agreed to pay for the services, she had entered
into any transactions with LVNV, and LVNV had presented the claim to her.

          At
the beginning of the trial, LVNV sought to admit into evidence the business
records of Tobie Griffin, a designated agent of LVNV.
 Attached to Griffin’s affidavit were records
pertaining to the Sears credit card allegedly issued to Kirkpatrick.  Kirkpatrick objected to the admission of this
affidavit on the ground that it was not based upon the personal knowledge of
the previous account owner’s records.  
Kirkpatrick complained that although LVNV had identified Sears as the “Original
Creditor,” neither the affidavit nor the attached documents reflect how
“Citibank” had “acquired the Sears account.” 
The trial court overruled Kirkpatrick’s objection and admitted into
evidence the business records affidavit and the attached documents. 

          In
her affidavit, Griffin testified that she had personal knowledge of the books
and records of LVNV concerning its claim against Kirkpatrick.  And Griffin explained that she attached to
her affidavit forty-eight pages of records, kept by LVNV in the regular course
of its business, which pertained to “Jeanne Kirkpatrick” with the same specific
social security number alleged in LVNV’s petition.  Griffin noted that this “was the name carried
in [LVNV’s] books and records” and it was in the regular course of its business
for an employee with personal knowledge of the act to make the records or to
transmit the information, the records were made at or near the time of the acts
indicated in the records, the records were originals or exact duplicates of those
records maintained by LVNV pertaining to the account of Jeanne Kirkpatrick,
and, per LVNV’s petition, there was an outstanding balance of $18,080.32.  

The first document attached to
Griffin’s business records affidavit is the affidavit of Nikki Foster, an “authorized
representative” of LVNV, who testified that the sum of $18,080.32, with
interest at 6% “per the terms and conditions,” was due and owing and that “all
just and lawful offsets, payments, and credits have been allowed.”  Foster referenced the account number that
appears in the attached documentation.  The
second attached document, an electronic record generated by LVNV, reflects an
outstanding account balance of $18,080.32, identifies Jeanne Kirkpatrick as the
account holder, identifies the account number and the last four digits of the specific
security number alleged by LVNV in its petition, and lists Kirkpatrick’s specific
address in Houston, Texas.  The statement
further identifies the “current owner” of the account as LVNV, the “Original
Creditor” on the account as “Sears/Sears MasterCard Classic,” and the “Previous
Owner” of the account as “Citibank.” 
Finally, the document reflects an “LVNV Purchase Date” of “6/02/2006”
and an “Account Origination Date” as “7/01/1975.”

The next document attached to
Griffin’s affidavit is the affidavit of C. Sue Aaron, an employee of Citicorp
Credit Services, Inc. (“CCSI”), who testified that she had personal knowledge
of and was familiar with Citibank’s records and her testimony was based upon
her personal knowledge and review of the records.  Aaron explained that CCSI is a subsidiary of Citibank (South
Dakota) N.A. and CCSI services credit card accounts for Citibank.  Such services included maintaining records as
they relate to credit cards owned by Citibank, including accounts previously
owned by Citibank USA, NA, which merged into Citibank in October 2006.   As custodian
of records for Citibank, Aaron stated that records are kept by CCSI on behalf
of Citibank in the regular course of business and it was in the regular course
of business for an employee with knowledge to make the records.  Aaron noted that CCSI, in the regular course
of business, provided credit card processing services, including “causing to be
sent to customers periodic billing statements reflecting true and correct
activities on the customers’ respective accounts.”  Aaron further noted that Citibank’s
records indicated that an account was opened on “7/1/1975” “in the name of
Jeanne Kirkpatrick” with the same specific social security number listed in
LVNV’s petition, Citibank’s records showed that when the account was sold on “6/2/2006”
there was a balance of $18,080.32, and the last payment that was made on the
account was made on “11/13/2005.”    Aaron stated that Kirkpatrick’s account had
been sold by Citibank to Sherman Originator LLC (“Sherman”) pursuant to a purchase
and sale agreement.

The next group of documents
attached to Griffin’s affidavit includes twenty-one pages of statements
identified as “Sears Statement Transaction” “Reference Reports.”  All of these statements reflect a “Report
Date” of October 2006 and a “Statement Date” including various dates from the
years 2004, 2005, 2006.   These
statements set forth the same account number referenced in the affidavits and
refer to “Jeanne E. Kirkpatrick” as the debtor. 
These statements also reflect various charges and payments, corresponding
dates, and account balances.  Some of the
statements also include the remark, “Thank you,” in acknowledgement of a
payment made by the debtor.  Although the
statements themselves do not include an address or any other indication on
their face reflecting if and when they were sent, Aaron, as noted above, testified
in her affidavit that Citibank
sent to their customers “periodic billing statements.”

The next document attached to
Griffin’s affidavit is a Bill of Sale, which states that Citibank assigned to
Sherman “Accounts described in Section 1.2 of the Agreement.”  The separate agreement referenced in this document
was not included in the documents attached to the business records affidavit.  The next document attached to Griffin’s
affidavit is a “Sale and Assignment,” which states that Sherman assigned to
LVNV certain “Receivable Assets” as defined in the “Agreement” and identified
on the “Receivable File (Exhibit A).” 
Again, the separate agreement referenced in this document is not
attached to Griffin’s affidavit.  However,
there is a document entitled “Exhibit A Receivables
File” attached, and this document includes a series of twenty-six separate four
digit numbers.  There was no evidence
introduced to explain the meaning of these numbers.

The next set of documents attached
to Griffin’s affidavit is fourteen pages of computer printouts, each containing
a single row of electronic information.  Among
the electronic entries included in these documents is a reference to an account
number that is consistent with the number listed in the “Sears Statement
Transaction” “Reference Reports.”  These records
identify the “debtor” as Jeanne Kirkpatrick, a debtor’s address that matches
the address listed in LVNV’s electronic records attached to Giffin’s
affidavit, and a “debtor’s ssn,” which matches the
last three digits of the social security number alleged in LVNV’s petition.  Additionally, there is a reference to an
account opening date of “07011975,” a “charge off amount” of $18,080.32, a last
payment date of “11132005,” a last purchase date of “20050909,” a current
balance of $18,080.32, a date of original delinquency of “11232005,” an “OfficerName” of “Sears MasterCard Classic,” and a  “Buyers Code” of “SHMC.”    

The next document attached to
Griffin’s affidavit is her second affidavit, in which she testified that she
was an authorized representative of Sherman, from which LVNV acquired Jeanne
Kirkpatrick’s account.  

The final document attached to
Griffin’s affidavit is a document titled “Sears National Bank Sears MasterCard
Card Account Cardholder Account and Security Agreement.”  This document consists of multiple pages and sets
forth terms and conditions for an account.[3]

LVNV’s counsel then testified as to
her attorney’s fees,[4] to which Kirkpatrick
objected on the ground that LVNV had failed to present its claim.  In response, LVNV’s counsel presented a
demand letter that she stated was sent to Kirkpatrick.  This demand letter, written on the letterhead
of counsel’s law firm “Hull & Associates P.C.,” contains a signature block for
“James N.  Hull” and a recipient’s address
block for “Jeanne Kirkpatrick,” which matches the address listed in LVNV’s
electronic records attached to Giffin’s affidavit.  It also identifies the “Previous Creditor” as
Sears and the “Current Creditor” as LVNV, and it states that LVNV purchased the
account from the “previous creditor.”  Kirkpatrick
objected to the admission of the demand letter, noting, among other things,
that it was not signed.  She also
complained that it did not include any reference to having been sent by
certified mail, and she asserted that there is no evidence that she had
received it.  LVNV’s counsel responded,
“I believe the address on the demand letter is the same address [Kirkpatrick] responded
to in interrogatories.”[5]  Following this exchange, LVNV rested its case
without introducing any further evidence.  

Kirkpatrick requested an instructed
verdict, which the trial court denied.[6] Kirkpatrick then testified that
her name, in 1975, was “Jeanne Keller” and she did not become “Jeanne
Kirkpatrick” until she married her husband in 1978.[7]  She noted that she had divorced Mr.
Kirkpatrick in 2006.  She denied that she
was the holder of the account, stating, “I have never seen this account.”  When asked whether she had ever been the
holder of a Sears MasterCard, Kirkpatrick stated, “Not that I can ever
remember.”  When asked to look through
the various charges and payments on the statements, she stated that she did not
make the charges or payments, did not know if anyone had made payments on her
behalf, and did not know whether her husband had made any charges.  She also denied ever having seen a demand
letter from LVNV.

On cross-examination, Kirkpatrick
stated that she had one credit card, which was a Visa, but she agreed that she
had previously shopped at Sears.  When
asked whether she had ever dined at Macaroni Grill and Steak and Ale, charges
for which appeared on the statements, Kirkpatrick stated that she had.  When asked whether she had shopped at “the
big liquor store,” Kirkpatrick stated she had not.  When asked how she had paid for items when
she shopped at Sears, Kirkpatrick stated that it had been a “long time” since
she had been to Sears but that she used “check or cash usually.”  She further stated, “I may have charged
something at Sears but I don’t ever remember doing it. . . . I had a Sears card that you could charge on but not a MasterCard
from Sears.”  Following this answer,
LNVN’s counsel asked the trial court “to take judicial notice that
[Kirkpatrick] has admitted that she had a Sears card
that she charged on.”  Kirkpatrick then stated,
“I have never said I didn’t have a Sears credit
card.  I just didn’t have their —a Sears
charge card.  You can’t use those at
Macaroni Grill, can you?”  Finally,
Kirkpatrick provided her “current address,” which matches the address listed in
LVNV’s electronic records attached to Giffin’s
affidavit.

On re-direct examination,
Kirkpatrick stated that she had no knowledge of receiving any statements from
the Sears MasterCard or the Citibank MasterCard referenced in the lawsuit at
her home address.  Kirkpatrick also stated
that, despite having asked for it, LVNV was not able to produce a copy of the
original agreement between her and Sears, there are no documents showing that
she had ever applied for the account, and there are no originals or copies of
actual statements sent to her in the case.

The trial court entered judgment in
favor of LVNV against “Jeanne Kirkpatrick” with the same specific social
security number alleged in LVNV’s petition. 
It awarded LVNV $18,080.32, plus interest at 6%, and $5,000 in
attorney’s fees.  In its findings of fact
and conclusions of law, the trial court found that Kirkpatrick and LVNV entered
into an account agreement, Kirkpatrick purchased goods and services on the
account, Kirkpatrick promised to pay for the account, and Kirkpatrick breached
the account agreement by not paying the balance of $18,080.32.  The trial court concluded that Kirkpatrick
was also responsible for interest and attorney’s fees and LVNV had standing to
sue for breach of the account agreement.

Legal and Factual Sufficiency

          In
her first issue, Kirkpatrick argues that the evidence is legally and factually
insufficient to support the trial court’s judgment and its awards of actual
damages and attorney’s fees because there is no evidence of a valid existing
agreement between her and LVNV, she breached the agreement, LVNV tendered
performance, LVNV sustained damages, or LVNV presented the claim to her.  Kirkpatrick asserts that she presented the
trial court with “irrefutable evidence” that she did not enter into any
agreement with Sears.  Kirkpatrick also
complains that, in the business records affidavit of Tobie
Griffin and the attached documents, there “is no mention of how Citibank
acquired the account from Sears.”

In an appeal of a judgment rendered
after a nonjury trial, a trial court’s findings of fact have the same weight as
a jury’s verdict, and we review the legal and factual sufficiency of the
evidence used to support them just as we would review a jury’s findings.  Catalina v. Blasdel, 881 S.W.2d 295, 297
(Tex. 1994).  In conducting a
legal-sufficiency review of the evidence, we must consider all of the evidence
in the light most favorable to the verdict and indulge every reasonable
inference that would support it.  City of Keller v. Wilson,
168 S.W.3d 802, 822 (Tex. 2005).  In
determining whether legally-sufficient evidence supports the finding under
review, we must consider evidence favorable to the finding, if a reasonable
fact finder could consider it, and disregard evidence contrary to the finding,
unless a reasonable fact finder could not disregard it.  Id. at 827.  When a
party attacks the legal sufficiency of an adverse finding on which it did not
have the burden of proof, it must demonstrate that there is no evidence to
support the adverse finding.  Croucher v. Croucher,
660 S.W.2d 55, 58 (Tex. 1983); Bellino v. Comm’n for Lawyer Discipline, 124 S.W.3d 380, 385 (Tex.
App.—Dallas 2003, pet. denied).  We will
sustain a legal-sufficiency or “no evidence” challenge if the record shows one
of the following: (1) a complete absence of evidence of a vital fact, (2) rules
of law or evidence bar the court from giving weight to the only evidence
offered to prove a vital fact, (3) the evidence offered to prove a vital fact
is no more than a scintilla, or (4) the evidence establishes conclusively the
opposite of the vital fact.  City of Keller, 168
S.W.3d at 810.

In reviewing a factual-sufficiency
challenge, we consider and weigh all of the evidence supporting and
contradicting the challenged finding and set aside the finding only if the
evidence is so weak as to make the finding clearly wrong and manifestly unjust.
 Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).  When a party attacks the factual sufficiency
of an adverse finding on an issue on which it did not have the burden of proof
at trial, it must show that there is insufficient evidence to support the
adverse finding.  Vongontard v. Tippit,
137 S.W.3d 109, 112 (Tex. App.—Houston [1st Dist] 2004, no pet.).

We review a trial court’s
conclusions of law de novo, and we will uphold the conclusions if the judgment
can be sustained on any legal theory supported by the evidence.  BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 794 (Tex. 2002).  Although
a trial court’s conclusions of law may not be challenged for factual
sufficiency, we may review the legal conclusions drawn from the facts to
determine whether the conclusions are correct.  BMC Software Belgium, N.V., 83 S.W.3d at 794.  If
we determine that a conclusion of law is erroneous, but that the trial court
nevertheless rendered the proper judgment, the error does not require reversal.
 BMC
Software Belgium, N.V., 83 S.W.3d at 794.  Finally, we note that the trial court acts as
fact-finder in a bench trial and is the sole judge of the credibility of
witnesses.  HTS Servs., Inc. v. Hallwood Realty
Partners, L.P., 190 S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no
pet.).

Breach of Contract

To recover on its breach of
contract claim against Kirkpatrick, LVNV had to establish that (1) a valid
contract existed; (2) it performed or tendered performance; (3) Kirkpatrick
breached the contract; and (4) LVNV was damaged as a result of Kirkpatrick’s
breach.  See Winchek v. Am. Express Travel Related Servs. Co.,
232 S.W.3d 197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.).
 Parties form a binding contract when the
following elements are present: (1) an offer; (2) an acceptance in strict
compliance with the terms of the offer; (3) meeting of the minds; (4) each
party’s consent to the terms; and (5) execution and delivery of the contract
with the intent that it be mutual and binding.  See Winchek, 232 S.W.3d at 202.

Here, LVNV presented evidence that,
in 1975, Citibank extended an offer of credit to “Jeanne Kirkpatrick” with a
specific social security number, Kirkpatrick used the card by incurring charges
and making payments, Kirkpatrick was provided statements reflecting her
charges, payments, and balances, and Kirkpatrick defaulted by failing to make
payments.  See Winchek, 232 S.W.3d at 202 (holding
that “conduct in using the card and making payments on the account for the
purchases and charges reflected on [defendant’s] monthly billing statements
manifested her intent that the contract become effective”).  In regard to the discrepancy regarding the
identity of the original creditor, although LVNV certainly could have offered
additional testimony explaining the documents attached to Griffin’s business
records affidavit, the trial court could have reasonably concluded that the actual
original owner of the account was Citibank. 
LVNV presented affidavit and documentary testimony demonstrating that
Citibank originated the account in 1975, assigned the account to Sherman, and Sherman then assigned the account to LVNV.  

In sum, although Kirkpatrick denied
being the account holder, the record reflects that she did have the same name
as the debtor, and she agreed that she lived at the same address of the debtor
identified in the documents that were attached to Griffin’s business records affidavit.  In addition, LVNV’s business records
affirmatively show that Kirkpatrick, who LVNV more specifically identified with
the last four digits of her social security number, had an account with
Citibank and had purchased goods and services on that account. The monthly
statements show Kirkpatrick’s name, reflect the specific charges, payments, and
balances, and identify the same account number that is referred to in all of
the supporting affidavits and documents. 
We conclude that LVNV presented some evidence that Kirkpatrick had an
account with Citibank and owed an outstanding balance on the account.   

Viewing the evidence in the light
most favorable to the trial court’s judgment, we hold that the evidence is
legally sufficient to support the trial court’s findings that Kirkpatrick and
Citibank entered into an account agreement; Kirkpatrick purchased goods and
services upon her account; by failing to pay her outstanding balance, she breached
the account agreement; and LVNV, as the assignee of the account, was damaged in
the amount of $18,080.32.  Moreover,
after considering all of the evidence in a neutral light, we hold that the
evidence is factually sufficient to support the trial court’s findings that
Kirkpatrick breached her contract by failing to pay her account and damaged
LVNV in the amount of $18,080.32.    

Presentment

A party may recover reasonable
attorney’s fees if its claim is for “an oral or written contract.”  Tex.
Civ. Prac. & Rem. Code Ann. § 38.001(8)
(Vernon 2008).  To recover attorney’s
fees under section 38.001(8), a claimant must: (1) be represented by an
attorney; (2) present the claim to the opposing party or to a duly authorized
agent of the opposing party; and (3) show that payment was not tendered before
the expiration of the 30th day after the claim was presented.  Id. § 38.002(1)–(3) (Vernon 2008). Presentment of a claim is
required to allow the debtor to pay the claim before incurring an obligation to
pay attorney’s fees.  Panizo v. Young Men’s Christian Ass’n of the Greater Houston Area, 938 S.W.2d 163, 168
(Tex. App.—Houston [1st Dist.] 1996, no writ). 

While the filing of a lawsuit does
not, by itself, constitute presentment, no particular form of presentment is
required—it may be written or oral.  Id.  “[A]ll that is
necessary is that a party shows that its assertion of a debt or claim and a
request for compliance was made to the opposing party, and the opposing party
refused to pay the claim.”  Standard Constructors, Inc.
v. Chevron Chem. Co., 101 S.W.3d 619, 627 (Tex. App.—Houston [1st Dist.]
2003, pet. denied).   Nonpayment
of a bill or invoice for thirty days has been held to satisfy the presentment
requirement.  See De Los Santos v. Sw. Tex. Methodist Hosp., 802 S.W.2d 749, 757
(Tex. App.—San Antonio 1990, no writ), overruled
on other grounds, 876 S.W.2d 314 (Tex. 1994).  Here, the affidavit of Aaron and the account
statements contained in the record provided some evidence that Citibank sent
Kirkpatrick billing statements requesting payment for outstanding amounts.  Moreover, although Kirkpatrick denied
receiving it, Citibank introduced into evidence a copy of a demand letter that
was addressed to Kirkpatrick.   On
cross-examination, Kirkpatrick agreed that she lived at this address.  Accordingly, we hold that the evidence is
legally and factually sufficient to support the trial court’s finding that LVNV
presented its claim to Kirkpatrick.  See City of Keller, 168
S.W.3d at 819; Cain, 709
S.W.2d at 176.

We overrule Kirkpatrick’s first
issue.

Business Records Affidavit

In her second issue, Kirkpatrick
argues that the trial court erred in admitting into evidence LVNV’s business
records affidavit because there is no evidence that LVNV or Sherman “relied
upon the accuracy of the Sears account,” no evidence as to how Citicorp or
Citibank “acquired the Sears account,” and “the records attached to the
affidavit show that the records are not trustworthy based on inconsistent
records within the same affidavit.”

We review a trial court’s decision
to admit or exclude evidence for an abuse of discretion.  In re J.P.B., 180 S.W.3d 570, 575 (Tex. 2005).  A document authored or created by a third
party may be admissible as business records of a different business if: (a) the
document is incorporated and kept in the course of the testifying witness’s
business; (b) that business typically relies upon the accuracy of the contents
of the document; and (c) the circumstances otherwise indicate the
trustworthiness of the document.  Simien v. Unifund
CCR Partners, 321 S.W.3d 235, 240–41 (Tex. App.—Houston [1st Dist.] 2010,
no pet.) (citing Bell v. State, 176 S.W.3d 90, 92 (Tex. App.—Houston [1st Dist.]
2004, no pet.)); Harris v. State, 846
S.W.2d 960, 963–64 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d).  

Here, Tobie
Griffin testified that the records were kept by LVNV in the regular course of
its business and she had personal knowledge of the books and records concerning
LVNV’s claim against Kirkpatrick.   Thus,
LVNV presented evidence that the documents attached to Griffin’s affidavit were
incorporated into and kept in the course of LVNV’s business.  See id.  Moreover, given Griffin’s affidavit testimony
that she had personal knowledge of the records retained by LVNV pertaining to
Kirkpatrick’s account, and Aaron’s supporting affidavit testimony, LVNV
presented evidence that it relied upon the accuracy of the contents of the
documents it maintained.  See id. 
Finally, because Citibank “must keep careful records of its customer’s
credit card debt,” and because “failure to keep accurate records could result
in criminal or civil penalties,” the circumstances indicate the trustworthiness
of the documents attached to Griffin’s affidavit.  See id.
(citing Harris,
846 S.W.2d at 963).  In regard to Kirkpatrick’s
primary complaint that there is no evidence demonstrating an assignment from
Sears to Citibank, the trial court could have reasonably found that Aaron’s
affidavit constituted some evidence that Citibank, not Sears, was actually the
original owner of the account.  We conclude
that the records attached to Griffin’s affidavit, which were authored or
created by a third party other than LVNV, were admissible as business records.  Accordingly, we hold that the trial court did
not err in admitting into evidence the business records affidavit of Griffin
and the attached documents.   

We overrule Kirkpatrick’s second
issue. 

Instructed Verdict

          In
her third issue, Kirkpatrick argues that the trial court erred in denying her motion
for instructed verdict because there is legally insufficient evidence to
support a finding that she had an agreement with LVNV, she breached the
agreement, LVNV performed, or LVNV sustained damages.  

Having held that the evidence is
legally sufficient evidence to support the trial court’s judgment in favor of
LVNV on its claim for breach of contract, we overrule Kirkpatrick’s third
issue.[8]

Conclusion

          We affirm
the judgment of the trial court. 

 

 

                                                                    Terry Jennings

                                                                   Justice 

 

Panel
consists of Justices Jennings, Massengale, and Huddle.











[1]
          At the beginning of its petition, LVNV identified the defendant as “Jeanne Kirkpatrick” with a specific
social security number.  As is explained
below, the trial court’s judgment is similarly limited by reference to “Jeanne
Kirkpatrick” with the same specific social security number.  

 





[2]
          LVNV also asserted causes of action against
Kirkpatrick for money had and received, account stated, and quantum meruit.  

 





[3]
          Although LVNV did not offer any
testimony or evidence to explain the information contained in these documents,
counsel for LVNV, before testifying to her attorney’s fees, sought to provide
an explanation.  She stated that the
documents attached to the business records affidavit included (1) “an affidavit
from Citibank showing that they are the original creditor, showing the account
originated with them, showing the amount due, and that it was transferred to
Sherman,” (2) a “plethora of credit card statements,” (3) a bill of sale
showing “how Citibank transferred the account to Sherman,” (4) a document
showing that Sherman transferred the account to LVNV, (5) a document showing
“the list of accounts that were transferred because accounts are transferred in
bundles,” (6) a series of documents (presumably the fourteen pages of
single-row electronic entries that we reference above) that are “data lines
transfer of the account,” and (7) the terms and conditions of a credit card.

 





[4]           Although counsel cited multiple tasks
for which she was seeking to recover fees, her testimony did not reference
preparing and sending a demand letter.  

 





[5]
          These interrogatories were not
introduced into evidence.  And, although
counsel argued that the demand letter had been sent, LVNV did not offer any
testimony that the letter was actually sent. 

 





[6]           Kirkpatrick
contended that LVNV had not proven that
she was “the one and the same [person] as set forth in the business records
affidavit.” The trial court remarked, “Well, she may not be Jeanne Kirkpatrick,
but [LVNV] has proved [its] case regarding a Jeanne Kirkpatrick, so it’s
denied.”

 





[7]
          When asked about when she married her husband,
the record reflects that she stated “1975—‘8,” and, when asked again, she
repeated 1978.

 





[8]
          Kirkpatrick waived any error in
the denial of her motion for directed verdict by introducing her own evidence
after LVNV had rested and not reurging her motion at
the close of all of the evidence.  See Shindler v.
Marr & Assoc., 695 S.W.2d 699, 706 (Tex. App.—Houston [1st Dist.] 1985,
writ ref’d n.r.e.).  However, because she was not required to
preserve her legal sufficiency challenge after the bench trial, we have
addressed Kirkpatrick’s legal sufficiency challenge.  See
Tex. R. App. P. 33.1(d) (“In a
nonjury case, a complaint regarding the legal or factual sufficiency of the
evidence . . . may be made for the first time on appeal in the complaining party’s
brief.”).